UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

PEDRO GARCIA,                  :
                               :
          Plaintiff            :    No. 4:CV-06-1533
                               :
     vs.                       :    (Complaint Filed 8/08/06)
                               :
                               :    (Judge Muir)
LT. JACK McARDLE, et al.,      :
                               :
          Defendants           :

**MEMORANDUM AND ORDER**

September 25, 2008

**Background**

On August 8, 2006, Pedro Garcia, an inmate formerly
confined at the Allenwood Low Security Correctional
Institution,("LSCI-Allenwood"), White Deer, Pennsylvania[1],
filed a Bivens[2] complaint pursuant to 28 U.S.C. § 1331. The
case is proceeding on the basis of an amended complaint which
was filed on July 24, 2007. The named Defendants are the

---

[1]On or about July 31, 2008, Garcia was released from
federal custody. He currently resides at a Community
Correctional Center in Flushing, New York. (See Doc. 56).

[2]Bivens v. Six Unknown Agents of the Federal Bureau of
Narcotics, 403 U.S. 388 (1971). A Bivens-type action is the
federal counterpart to an action filed under 42 U.S.C. § 1983.
See Paton v. LaPrade, 524 F.2d 82 (3d Cir. 1975); Farmer v.
Carlson, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988)(Nealon, J.)

following LSCI-Allenwood employees: Lt. Jack McArdle, Chaplain William Hoops, Unit Counselor Jeff Solomon, Case Manager Danny Thomas, and Assistant Warden Bobby Meeks.

Plaintiff challenges an incident report he received for Possession, Manufacture, or Introduction of a Non-Hazardous Tool, or other Non-Hazardous Contraband, a violation of Disciplinary Code 331. Plaintiff claims that the "charges against him were trumped up, due to the fact that [plaintiff] had previously wrote administrative complaints against both Lt. McArdle and Chaplain Hoops." (Doc. 33, amended complaint). Presently before the Court is defendants' motion for summary judgment. (Doc. 42). The motion is fully briefed and is ripe for disposition. For the reason set forth below, the motion will be granted.

**Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

2

of law." Fed.R.Civ.P. 56(c).  "[T]his standard provides that
the mere existence of <u>some</u> alleged factual dispute between
the parties will not defeat an otherwise properly supported
motion for summary judgment; the requirement is that there be
no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in
original).

A disputed fact is "material" if proof of its existence
or nonexistence would affect the outcome of the case under
applicable substantive law.  <u>Anderson</u>, 477 U.S. at 248; <u>Gray
v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992).
An issue of material fact is "genuine" if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party.  <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local
514, United Brotherhood of Carpenters and Joiners of America</u>,
927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of
material fact, the court must view the facts and all
reasonable inferences in favor of the nonmoving party.  <u>Moore
v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v.
Consolidated Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir.

1992); <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988).   In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.   When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.   <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 324 (1986).   The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."   <u>Matsushita Electric Industrial Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986).   When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

4

<u>Celotex</u>, 477 U.S. at 323.   <u>See</u> <u>Harter v. G.A.F. Corp.</u>, 967 F.2d 846, 851 (3d Cir. 1992).

**<u>Statement of Facts</u>**

From the pleadings, declarations and exhibits submitted therewith, the following facts can be ascertained as undisputed.

The Bureau of Prison's ("BOP") policy regarding incoming hardcover publications provides, in relevant part,

> (a)(1)  At all Bureau institutions, an inmate may receive hardcover publications and newspaper only from the publisher, from a book club, or from a bookstore.  The sender's address shall be clearly identified on the outside of the package.

BOP PS 5266.10(6)(a)(1)(Jan. 10, 2003) (codified at 28 C.F.R. § 540.71(a)(1)(2002)).

On or about August 26, 2005, the LSCI-Mail Room returned two books mailed to plaintiff from his Rabbi.  (Doc. 33, ¶ 27).  In a letter to Garcia, dated September 19, 2005, Garcia's Rabbi acknowledged the returned books, stating the following:

> Unfortunately two books, with the letter enclosed were returned, stating that we are not a publishing house and also not a store and therefore cannot sent you any hard cover books. Maybe you can talk to your chaplain and ask him

5

> if he wouldn't mind receiving some books for you:
> The other alternative is that we add publishing
> to our return address, like Reaching Out
> Publishers do you think it would work then?  But
> this will take a few weeks.

(Doc. 46, Ex. 1, Att. 8, Sept. 19, 2005 letter).

At the end of September, 2005, upon the advice of his Rabbi, Garcia spoke to Chaplain Hoops as to whether Religious Services could receive the books as a donation from the Lubavitch Youth Organization.  (Doc. 33, amended complaint at ¶ 28; Doc. 46, Ex. 6, Declaration of Chaplain William Hoops at ¶ 3).  Chaplain Hoops informed Garcia that the books could be received as a donation so long as there was no cost involved.  (Doc. 46, Ex. 6 at ¶ 4).

Subsequent to his conversation with Garcia, Chaplain Hoops received a call from Rabbi Spritzer of the Lubavitch Youth Organization.  _Id_. The Rabbi was interested in donating the books _Leviticus_ and _Exodus_ to Religious Services at LSCI-Allenwood.  _Id_.

On January 18, 2006, Garcia filed administrative remedy 401335-R1, regarding the denial of his religious freedoms. (Doc. 46, Ex. 1, Att. 1, p. 9).  On January 23, 2006, this

6

remedy was rejected for filing at the wrong remedy level. <u>Id</u>.

On February 2, 2006, after the approval from Chaplain Hoops, the two religious books, <u>Leviticus</u> and <u>Exodus</u> were received in the Religious Services Department. (Doc. 46, Ex. 6 at ¶ 5). The books were valued at $103.50, and were received from the Lubavitch Youth Organization. <u>Id</u>. at ¶6. In accordance with policy, Religious Services can accept donations of $250 or less, but cannot solicit donations. <u>Id</u>. at ¶ 7. The two books were given to the inmate clerk for tracking. <u>Id</u>. at ¶ 8.

Upon the inmate clerk receiving the books for tracking, Garcia intercepted them stating that they belonged to him. <u>Id</u>. at ¶ 9. Although Chaplain Hoops did confirm with the clerk that the books were for Garcia, as it is not unusual for Religious Services to receive donated books from organizations for a specific person, donated items remain institution property and are available for any inmate to use. <u>Id</u>. at ¶ 10. Chaplain Hoops counseled the inmate clerk for failing to catalog the books prior to giving them to Garcia. <u>Id</u>. at ¶ 11.

On or about February 9, 2006, the inmate Chapel clerk asked Garcia if he could bring the books back to the Chapel so that he may log them. (Doc. 33, ¶ 39). At that time, the inmate clerk retrieved the books from Garcia and cataloged them. (Doc. 46, Ex. 6 at ¶ 12). The books were then re-issued to Garcia with a return date of two weeks. Id. at ¶ 13.

Upon discovering that Garcia was under investigation for circumventing policy, the books were retrieved from his property and returned to Religious Services. Id. at ¶ 14.

On February 23, 2006, after monitoring Garcia's mail for several months, defendant McArdle placed Garcia in the SHU at LSCI-Allenwood on administrative detention status pending the outcome of an investigation for receiving unauthorized items (two books) through unauthorized means (not directly from the publisher). (Doc. 46, Ex. 2, Declaration of SIS Lieutenant Jack McArdle, at ¶ 3).

On April 14, 2006, Garcia was temporarily transferred to Special Housing Unit ("SHU") at Allenwood Federal Correctional Institution, White Deer, (FCI-Allenwood),Pennsylvania, for security reasons surrounding the

8

nature and sensitivity of the investigation, and to cease all communications between him and Chaplain Hoops. (Doc. 46, Ex. 2, Declaration of Lieutenant Jack McArdle at ¶ 8).

On June 14, 2006, Garcia filed administrative remedy 416773-F1 complaining that staff confiscated books from his personal property. (Doc. 46, Ex. 1, ¶ 13). On June 30, 2006, this administrative remedy was closed. Id. No appeal from this decision was filed. Id.

On June 15, 2006, plaintiff returned to the LSCI-Allenwood. (Doc. 46, Ex 2, ¶ 9).

On June 22, 2006, Garcia was served with Incident Report Number 1481400, charging him with Possession, Manufacture, or Introduction of a Non-Hazardous Tool, or other Non-Hazardous Contraband, a violation of Disciplinary Code 331; Possession of Anything Not Authorized, in violation of Disciplinary Code 305; and Giving Money or Anything of Value to, or Accepting Money or Anything of Value from Another Inmate, or Any Other Person Without Staff Authorization, in violation of Disciplinary Code 328. (Doc. 46, Ex. 2, Att., 3, Discipline Hearing Officer Report).

On June 29, 2006, Plaintiff appeared for his disciplinary hearing. Id. The Disciplinary Hearing Officer ("DHO") determined that plaintiff had received advance written notice of the charge on June 22, 2006, and was advised of his rights before the DHO by a staff member on June 23, 2006. Id. The summary of Plaintiff's statement is as follow:

> At the onset of this hearing, GARCIA was advised of his Rights before the DHO, indicated he understood them (waived staff representative and witness testimony) and chose to provide the following statement:
>
> "This is incorrect. This is a third set of books I've had come in. I got them in October or November and December and January. I wrote Hoops up for violating my civil rights, and McArdle. This is all because of that."
>
> No procedural issues were cited, nor was any documentary evidence provided for consideration.
>
> Evidence was verbally provided by the DHO to the extent believed practical under FOIAE/PA policy.

Id. The documentary evidence which the DHO considered in making his determination included the Incident Report and Investigation; Investigation dated June 2, 2006, from Jack McArdle, Special Investigative Supervisor; Photocopies of

handwritten correspondence and envelopes to Rabbi Spritzer from Garcia; photocopy of stamps; photocopy of correspondence and envelope from Lubavitch Youth Organization to Garcia; Photocopy of correspondence and envelope to Steve from Garcia; Memorandum dated March 31, 2006, from Jonathan C. Miner, Warden; and LSCI-Allenwood donation report for the period of January 1, 2006 to March 31, 2006.  <u>Id</u>.

The specific evidence taken from the relied upon documentary evidence was as follows:

> During this discipline hearing regarding GARCIA, Pedro, Register No. 45670-054, for the charges of Possession, Manufacture, or Introduction of a Non-Hazardous Tool, or other Non-Hazardous Contraband, Code 331; Possession of Anything Not Authorized, Code 305; and Giving Money or Anything of Value to, or Accepting Money or Anything of Value from Another Inmate, or Any Other Person Without Staff Authorization, Code 328, the following information was evidentiary and documented by the DHO in his findings.
>
> GARCIA's involvement in the incident, as noted in Section 11 of the Incident Report 1481400, as provided by Jack McArdle, SIS Lieutenant, was viewed as inculpatory in this case. Paraphrased, Jack McArdle writes: Based on the evidence gathered during this investigation, it is clear that inmate Pedro GARCIA circumvented procedures and managed to receive two Religious Books through unauthorized channels. Specifically, inmate GARCIA solicited help from Rabbi Shmuel Spritzer to purchase two Religious

11

Books, Exodus and Leviticus, and send them to him at LSCI-Allenwood.  These are hard cover books, and were returned to the sender due to the fact they did not come from a publisher.  Inmate GARCIA then approached Chaplain Hoops in late January to see if Religious Services could receive donations from Religious Organizations. Chaplain Hoops told inmate GARCIA that they could receive donations as long as there was no cost. Inmate GARCIA then coordinated the purchasing of the Religious Services books through Rabbi Spritzer.  The books were received on February 12, 2006.  Inmate GARCIA received the books from inmate Joseph Trapp in Religious Services. Inmate GARCIA told inmate Trapp that the books were his property.  On or about the next day, Chaplain Hoops finds out that inmate Trapp issued the books to GARCIA without cataloging them prior to issuing them.  Chaplain Hoops tells inmate Trapp to retrieve the books and properly catalogue them and re-issue them to GARCIA. Chaplain Hoops stated that he counseled inmate Trapp and informed him that donated items belong to Religious Services.

Inculpatory evidence in the form of material from the investigation completed on June2, 2006, from Jack McArdle, were reviewed.  In this, Lieutenant McArdle indicated GARCIA was placed in Special Housing on February 23, 2006, in relation to an investigation regarding him receiving religious books through the chapel as donations, while it was believed that they were purchased by GARCIA, through Lubavitch Youth Organization.  In a February 13, 2006, letter cited as written by GARCIA and addressed to Rabbi Shmuel Spritzer, with the Lubavitch Youth Organization, GARCIA thanks the Rabbi for the books he sent to Chaplain Hoops and that his mother (GARCIA's) would be sending him $200.00 in payment.  In a February 17, 2006, letter from GARCIA to

12

Spritzer, he confirmed that his mother had sent $200.00 to him for the books.  In a March 13, 2006, letter from Rabbi Spritzer to GARCIA, he indicated the books purchased by him (Spritzer) are for GARCIA.

Upon questioning by the DHO, GARCIA denied the charges.  He elaborated upon his plea by stating, "This is incorrect This is a third set of books I've had come in.  I got them in October or November and December or January.  I wrote Hoops up for violating my civil rights and McArdle. This is all because of that."  The DHO noted for the record, GARCIA made no indication the religious books, Exodus and Leviticus, were not received at LSCI-Allenwood.  His defense of the charges in this case, seem to revolve around a belief he was charged due to administrative and legal issue surrounding Chaplain Hoops and SIS Lieutenant McArdle.  The DHO did not find this information material in showing a charged act not committed.  It was clear to the DHO, in letters written by the hand of GARCIA, he was, and had been, making arrangements to pay Rabbi Spritzer and the Lubavitch Youth Organization for religious books, under the guise of a "donation." This was fully supported in the letters written by GARCIA citing his arrangement for payment for the "donated" books. This behavior was believed by the DHO to have constituted his involvement in a conspiracy to introduce a non-hazardous contraband, Code 331.  The DHO expunged the Possession of Unauthorized Items and Giving Money to Another Without Authorization infractions, as both charges, although potentially legitimate, were encompassed in GARCIA's introduction of contraband.

After the consideration of evidence listed in Section III and V of this hearing report and documented above, the DHO has drawn the

13

> conclusion the greater weight of the evidence,
> listed in paragraphs  two through four above,
> supports the finding GARCIA, Pedro, Register No.
> 45670-054, committed the prohibited acts of
> Introduction of Non-Hazardous Contraband, Code
> 331, on February 12, 2006, at or about 2:30 p.m.,
> in the Union Unit/Mail Room, LSCI-Allenwood, PA.

Id.  The hearing officer found Garcia guilty of the charge and sanctioned him to fifteen (15) days disciplinary confinement, thirteen (13) days disallowance of Good Conduct Time, and six (6) months loss of visitation privileges, concluding, December 29, 2006.  Id.  The DHO documented his reasons for the sanctions given as follows:

> GARCIA's introduction of contraband infringed
> upon the security of the facility.  This type of
> activity potentially threatens the safety of
> staff and inmates.   Accordingly, disciplinary
> segregation and disallowance of good conduct time
> are sanctioned in an effort to punish GARCIA for
> his behavior, while loss of visitation privileges
> is used to hopefully deter him from this behavior
> in the future.

Id.  Garcia was advised of his appeal rights at the conclusion of the hearing.[3]  Id.

---

[3]Plaintiff appealed the finding of the DHO to the Warden, Regional Director and General Counsel for final review. (Doc. 46, Ex. 1, Declaration of Susan Albert, Paralegal Specialist, at ¶ 14).  He was denied relief at all levels.  Id.

14

On July 1, 2006, plaintiff's family members arrived at LSCI-Allenwood from New York City and were denied visitation with plaintiff. (Doc. 33, ¶ 89).

On July 6, 2006, due to Garcia's recent incident report, which was his third infraction, and his poor institutional adjustment, Garcia received a separation status, and his security classification was updated. (Doc. 46, Ex. 5, ¶¶ 6 - 8).

On August 1, 2006, Garcia filed administrative remedies 421847-F1 and 421857-F1, claiming that his personal property was confiscated and destroyed. (Doc. 46, Ex. 1, Att. 1, pp. 11-12). These administrative remedies were rejected on the same date for failing to file an informal remedy first and for raising more than one issue per administrative remedy. Id.

On August 4, 2006, Garcia filed administrative tort claim 2006-04772 requesting $75.00 for losses he incurred when his family came to visit him and was denied visitation due to Garcia's placement in the SHU. (Doc. 46, Ex. 1, Att. 4, Administrative Tort Claim). On January 30, 2007, Garcia's claim was denied. Id.

15

In August, 2006, Garcia was approved for designation to a medium-security institution based on his need for greater security, his separation status, and his eligibility to participate in a 500 hour comprehensive drug program. (Doc. 46, Ex. 5, ¶ 10). As a result, Garcia was recommended for a transfer to an institution more suitable to his security and custodial needs. Id. On September 12, 2006, Garcia was transferred to the Federal Correctional Institution in Fairton, New Jersey. Id. at ¶ 11.

On August 8, 2006, Plaintiff filed the instant action in which he alleges that "the herein named defendants confederated, combine, aid and abetted, conspired with each other, and other individuals, to use various means and tactics to retaliate against plaintiff for filing administrative complaints against certain defendants, in violation of Plaintiff's First Amendment Right, 'to petition the government for redress of grievances'." (Doc. 33, amended complaint).

Specifically, plaintiff alleges Lt. McArdle is "covering up" the fact that Chaplain Hoops "stole" two of his religious books, marking them "Property of Chapel". Id. at ¶¶

16

55-56. He further claims that McArdle withheld evidence and retaliated against him for filing grievances, id., ¶ 72, transferred him to another institution and failed to contact his family to inform them that their scheduled visit needed to be cancelled. See Id. at ¶¶ 62-63, 84. Finally, he claims that McArdle failed to properly investigate his allegations that he had received the two books from Chaplain Hoops, and previously received nine other books with the understanding they were to be his personal property. Id. at ¶¶ 100-101.

With respect to defendant Hoops, Garcia alleges that Hoops threatened to place him in the SHU, id. at ¶ 8, failed to open the Chapel for service, showed partial treatment toward other inmates, confiscated three of his religious books, retaliated against him for filing grievances, transferred him to another institution, and fabricated a story to have him investigated for stealing books. Id. at ¶¶ 2-11, 30-32, ¶¶ 42-44.

As for defendant, Counselor Solomon, Garcia alleges that Solomon "failed to properly process administrative complaints filed by plaintiff against Solomon's co-worker, thus, violating plaintiff's right to petition the court for

redress of grievance, and furthering the retaliation against plaintiff." Id. at ¶ 107.  He further claims that Solomon failed to contact his family to inform them that their visit needed to be cancelled. Id. at ¶¶ 86-88.

With respect to defendant, Unit Manager Thomas, Garcia alleges that "Thomas manipulated plaintiff's custody classification score for the purpose of transferring plaintiff erroneously to the medium FCI-Fairton as retaliation for plaintiff filing administrative complaints against officials at FSCI-Allenwood, and to frustrate plaintiff's ability to pursue and complete his administrative remedy process." Id. at ¶ 108.

Finally, as to defendant, Associate Warden Meeks, plaintiff states that "Meeks failed in his duty to properly supervise his subordinates from taking steps to retaliate [against] plaintiff for exercising his First Amendment right to seek the government for redress of grievances," as well as "failed to ensure a proper investigation into plaintiff's administrative complaints regarding plaintiff's assertions that the aforementioned incident report was sought against plaintiff for the purpose of retaliation against plaintiff

18

filing administrative complaints against institutional officials." Id. at ¶¶ 109, 110.

For relief, Garcia requests restoration of thirteen (13) days of good conduct time, a sentence credit for each day he spent in the SHU, the return of his religious books, $500.00 in compensatory damages for expenses he incurred in filing this action and mailing administrative remedies, that each defendant be prosecuted for "their acts in retaliation against plaintiff", $75.00 in compensatory damages to reimburse his family for traveling to LSCI-Allenwood to visit when he was unable to meet with them, and $25,000.00 in punitive damages from each defendant for retaliation and conspiracy. Id. at pp. 15-16.

On August 17, 2006, Garcia filed administrative remedy 423955-F1 requesting a change in his custody classification scoring. (Doc. 46, Ex. 1, Att. 1, p. 12).  On August 31, 2006, this administrative remedy was denied.  Id.

**Discussion**

### A.  **Exhaustion of Administrative Remedies**

Section 1997e(a) of title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit. Booth v. Churner, 532 U.S. 731, 739 (2001). Failure to exhaust available administrative remedies is an affirmative defense. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). As such, the failure to exhaust available administrative remedies must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP"). The BOP Administrative Remedy Program is described at 28 C.F.R. Part 542. The avowed purpose of the program "is to allow an

20

inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Inmates must first informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. Id. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. Id. at §§ 542.15(a) and 542.18.

Defendants have presented computerized records of Garcia's pursuit of administrative remedies while incarcerated at LSCI-Allenwood. The records show that between April 14, 2005, the date Garcia was transferred to LSCI-Allenwood and August 8, 2006, the date plaintiff filed the instant action, plaintiff filed twelve (12) informal remedies (BP-8), (Doc. 46, Ex. 1, Att. 2), all of which were responded to, id., and fourteen (14) administrative remedies. (Doc. 46, Ex. 5, Declaration of Danny Thomas, Case Manager, at ¶ 5). None of administrative remedies raise the issue of

21

retaliation by staff.   Id.   Nine of the administrative
remedies predate the impetus for plaintiff's incident report,
specifically, plaintiff's attempt to receive hardcover books
through unauthorized means, and concern issues of plaintiff's
sentence computation and phone usage.  (Doc. 46, Att. 1, pp.
15-19).   The remaining administrative remedies are as
follows:

> On January 18, 2006, Garcia filed administrative
> remedy 401335-R1, regarding the denial of his
> religious freedoms.  (Doc. 46, Ex. 1, Att. 1, p.
> 19).   On January 23, 2006, this remedy was
> rejected for filing at the wrong remedy level.
> Id. Plaintiff made no attempt to refile this
> administrative remedy at the correct level.  Id.

> On June 14, 2006, Garcia filed administrative
> remedies 416773-F1 and 416776-F1, concerning
> complaining that staff confiscated books from his
> personal property and seeking to have his
> incoming publications forwarded through the
> mail.   Id. at p. 20.    Administrative remedy
> 416776-F1 was rejected that same day with an
> informational response.  No attempt was made to
> refile this administrative remedy.  On June 30,
> 2006, administrative remedy 416773-F1 was closed
> for explanation purposes only.  Id.   No appeal
> from this decision was filed.  Id.

> On July 17, 2006, Garcia filed appeal number
> 420233-R1 to the June 29, 2006, DHO sanctions for
> code 331(possession of non-hazardous contraband).
> (Doc. 46, Ex. 1, Att. 3).   This administrative
> remedy was closed and denied on August 16, 2006.
> Id. On September 11, 2006, Garcia filed appeal

22

number 420233-A1 at the Central Office level, which was closed and denied on November 13, 2006. Id.

On August 1, 2006, Garcia filed administrative remedies 421847-F1 and 421857-F1, claiming that some of his personal property was confiscated and destroyed. (Doc. 46, Ex. 1, Att. 1, pp. 21-22). These administrative remedies were rejected on the same date for failing to file an informal remedy first and for raising more than one issue per administrative remedy. Id. Plaintiff made no attempt to refile these administrative remedies. Id.

On August 17, 2006, after the filing of the instant civil rights action, Garcia filed administrative remedies 423955-F1 and 423965-F1, requesting a change in his custody classification scoring and complaining that staff failed to contact his family regarding a visit. (Doc. 46, Ex. 1, Att. 1, pp. 22-23).

The Court finds that all competent evidence of record in this case demonstrates that Garcia has failed to properly exhaust administrative remedies. None of the administrative complaints filed by Garcia raised the issues set forth in the amended complaint. The failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

23

In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under § 1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Garcia either failed to file an administrative grievance regarding issues raised in his amended complaint, failed to complete the administrative grievance process concerning the matters alleged in the amended complaint, or filed a grievance concerning matters in the amended complaint, after the filing of the instant action. Thus, he has sustained a procedural default under the applicable DOC regulations.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh

24

Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Garcia offers no justification for his failure to exhaust his administrative remedies.

He urges that his claims should be considered properly exhausted or, in the alternative, that the administrative remedy process should be considered "unavailable" as it relates to his exhaustion efforts and, therefore, he should be permitted to proceed with his claims in this Court. (Doc. 52, Brief in Opposition, pp. 10-11). In support of this, Garcia claims that Counselor Solomon failed to file or respond to his administrative remedies, and that this failure, motivated by retaliation, rendered the administrative process unavailable. Id. Aside from the sweeping charges in his brief, Garcia provides no evidence of this allegation. As the Court of Appeals in Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991) stated, a party opposing summary judgment may not rest upon mere allegations, general denials, or vague statements that conduct occurred. The evidence submitted must show more than some metaphysical

doubt as to the material facts.  Id. at 500.  Thus, the Court
finds that Garcia is now foreclosed from litigating his
retaliation claims, his confiscation of property claim, his
challenges to placement in the SHU, his transfer, his custody
classification and his claim that staff failed to contact his
family regarding a visit.

In Spruill, the Court of Appeals for the Third Circuit
found that a procedural default component to the exhaustion
requirement served the following congressional objectives:
"(1) to return control of the inmate grievance process to
prison administrators; (2) to encourage development of
administrative record, and perhaps settlements, within the
inmate grievance process; and (3) to reduce the burden on the
federal courts by erecting barriers to frivolous prisoner
lawsuits." 372 F.3d at 230.  In Pusey v. Belanger, No. Civ.
02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the
court applied Spruill to dismiss an inmate's action for
failure to timely pursue an administrative remedy over the
inmate's objection that he did not believe the administrative
remedy program operating in Delaware covered his grievance.
In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the

court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances.  In <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in <u>Pozo</u>, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."  Finally, in <u>Oriakhi v. United States</u>, 165 Fed. Appx. 991, 2006 WL 314462 (3d Cir. 2006), the Court of Appeals for the Third Circuit found that the exhaustion requirement is not satisfied if an inmate files an action in the district court prior to completing the administrative remedy process.  <u>See also</u>.  <u>Ahmed v. Dragovich</u>, 297 F.3d 201, 209 & n.9 (3d Cir. 2002).  These precedents support this Court's decision to enter judgment in favor of defendants.

**B.   <u>Restoration of Good Conduct Time</u>.**

To the extent that plaintiff seeks the restoration of thirteen (13) days of good conduct time, as well as damages, in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or

imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87.

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the rationale in Heck to disciplinary proceedings, holding that the expungement of the inmate disciplinary proceeding would imply the invalidity of the underlying disciplinary action: "[t]he principal procedural defect complained of by the respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." Edwards, 520 U.S. at 646. Accordingly, an inmate may not bring a civil rights action for damages related to an inmate disciplinary proceeding without first challenging and overturning, via appropriate proceedings, the disciplinary hearing in question. Id. at 646-47.

The Plaintiff's action specifically seeks damages as well as the expungement of the disciplinary proceeding. An

28

award of damages would implicate the validity of the underlying disciplinary proceedings. Under <u>Heck</u> and <u>Edwards</u>, Garcia cannot assert such a claim unless he can demonstrate that the DHO's decision regarding the misconduct was invalidated on administrative appeal or through issuance of a writ of habeas corpus. This he is unable to do as the documentary evidence before this Court shows that the DHO's decision was affirmed on appeal through the BOP's administrative remedy review system. Further, the record contains no allegations that a petition for writ of habeas corpus challenging the validity of the misconduct proceeding was ever filed, let alone resolved favorably to Garcia, nor is there anything in the record from which we could infer such an action. Thus, because the disciplinary proceeding has not been determined unlawful, it is appropriate to dismiss the plaintiff's claim for damages as he cannot, under <u>Heck</u>, maintain a <u>Bivens</u>[4] action for unlawful imprisonment until the basis for that imprisonment is rendered invalid.

---

[4]The <u>Heck</u> and <u>Edwards</u> rulings have been held applicable in <u>Bivens</u> proceedings as well as § 1983 actions. <u>Clemente v. Allen</u>, 120 F.3d 703, 705 (7th Cir. 1997).

## B.   <u>SHU Confinement</u>

Garcia seeks to receive credit for each day he spent in the SHU from February, 2006, until arrival at FMC-Lexington, which, as plaintiff calculates, amounts to ten (10) months. (Doc. 33).  Although plaintiff seeks credit for a ten (10) month time frame, the record before this Court reflects that Garcia was placed in the SHU on February 23, 2006, pending investigation into whether he received unauthorized items. As a result of his misconduct, plaintiff was then placed in disciplinary segregation for fifteen (15) days.  Upon his release form disciplinary segregation, plaintiff was placed in the SHU pending his transfer to FCI-Fairton, on September 12, 2006.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall ...deprive any person of life, liberty, or property, without due process of law. . . ."  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.  See <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995);

30

Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). A protected liberty interest may be created by either the Due Process Clause itself or by state law. See Sandin, supra. Due process requirements apply only when the prison's officials actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 482. Conversely, there can be no due process violation where there is no protected liberty interest implicated.

"[T]he baseline for determining what is 'atypical and significant'- the 'ordinary incidents of prison life' -is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997)(quoting Sandin, 515 U.S. at 486; 115 S.Ct. at 2301). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. Sandin, 515 U.S. at 486; see also Griffin, 112 F.3d at 706-07 (finding that fifteen month period of administrative custody did not

31

deprive prisoner of a liberty interest); <u>see also</u> <u>Smith v.</u>
<u>Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002)("[C]onfinement in
administrative or punitive segregation will rarely be
sufficient, without more, to establish the kind of 'atypical'
deprivation of prison life necessary to implicate a liberty
interest."). Moreover, prolonged confinement in
administrative custody does not constitute cruel and unusual
punishment. <u>Griffin</u> at 709.

Based on <u>Sandin</u> and <u>Griffin</u>, this Court finds that any
claim by Garcia that his rights were violated merely because
he was confined in the SHU are without merit.

###    C.    **Garcia's Federal Tort Claims Act Claim**

The Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. §
2671 <u>et</u> <u>seq</u>., is a statutory waiver of sovereign immunity for
tort claims. <u>Gotha v. United States</u>, 115 F.3d 176, 179 (3d
Cir.1997). The FTCA allows the government to be sued "in the
same manner and to the same extent as a private individual
under like circumstances." 28 U.S.C.A. § 2674. However, as
the FTCA is an express waiver of sovereign immunity, strict
compliance with its provisions is required. <u>Livera v. First</u>
<u>Nat'l Bank</u>, 879 F.2d 1186, 1194 (3d Cir.1989).

As a prerequisite to a suit under the FTCA, a claim must first be presented to, and denied by, the federal agency.  The FTCA provides:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ⋯ unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely." Wilder v. Luzinski, 123 F. Supp.2d 312, 313 (E.D.Pa.2000) (citing McNeil v. United States, 508 U.S. 106, (1993); Wujick v. Dale & Dale, 43 F.3d 790, 793-94 (3d Cir.1994)).  Defendants concede that Garcia has exhausted his administrative tort claim remedies. (Doc. 46, p. 21).

The Federal Tort Claims Act governs all claims against the United States for money damages, for injury or loss of personal property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the

Government while acting within the scope of his office or employment. 28 U.S.C. § 2675(a). Further, under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for . . . punitive damages." 28 U.S.C. § 2674. The FTCA "provides a mechanism for bringing a State law tort action against the Federal Government in Federal Court" and the "extent of the United States' liability under the FTCA is generally determined by reference to state law." In re Orthopedic Bone Screw Product Liability Litigation, 264 F.3d 344, 362 (3d Cir. 2001)(quoting Molzof v. United States, 502 U.S. 301, 305 (1992)).

It is well-settled that a federal district court in considering a FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b)(1991); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). To establish a cause of action for negligence in Pennsylvania, the Plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal

connection between the conduct and the resulting injury; and (4) actual damages. <u>Pittsburgh Nat'l Bank v. Perr</u>, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

The Superior Court of Pennsylvania has stated that a duty is "predicated on the relationship existing between the parties at the relevant time." <u>Id</u>., citing <u>Morena v. South Hills Health System</u>, 501 Pa 634, 642 n. 5 (1983). Title 18, Section 4042 of the U.S. Code states that the BOP will "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042. This language clearly establishes that the BOP has a duty to those in its care.

Garcia alleges that the defendants breached their duty of care to him when they failed to notify his family of his placement in disciplinary segregation, and as a result, when they arrived at the institution they were unable to visit with him.  Plaintiff claims that he incurred a loss of $75.00, for monies he extended to his family to make the visit.

Pursuant to 28 C.F.R. § 541.21c(10),

> Staff shall make reasonable effort to notify
> approved social visitors of any necessary
> restriction on ordinary visiting procedures so
> that they may be spared disappointment and
> unnecessary inconvenience. If ample time for
> correspondence exists, staff may place the burden
> of this notification to visitors on the inmate.

Garcia was sanctioned to disciplinary confinement on June 29, 2006. He claims that on June 30, 2006, he requested from both defendant McArdle and defendant Solomon that his family be contacted and informed not to make the trip. There is no record evidence that either of these defendants were notified by Garcia to cancel his family's visit. (See Doc. 46, Ex. 2, ¶ 13 and Ex. 3, ¶ 3). However, even if it could be assumed that these defendants were aware of plaintiff's request and failed to make a reasonable effort to contact plaintiff's family, Garcia has failed to produce any evidence of damages.

Garcia's institution account fails to show any withdrawals for the amount of $75.00 during the month of June. (Doc. 46, Ex. 3, Att. 1). In fact, Garcia's account shows no withdrawals for the month of June and the first withdrawal for the month of July occurs on July 18, 2006.

Thus, Garcia fails to show any withdrawals for the amount of $75.00 in that time frame.

To the extent that Garcia argues in his brief in opposition to defendants' motion for summary judgment that his brother had the authority to withdraw funds from plaintiff's savings account, and that the $75.00 came from plaintiff's personal savings account, (Doc. 52, p. 11), once again, plaintiff has failed to submit documentary evidence that such transaction occurred and that plaintiff is entitled to compensatory damages as a result.  As such, defendants are entitled to summary judgement.

### C. **Lack of Personal Involvement of Associate Warden Meeks**

Claims brought under § 1983 cannot be premised on a theory of <u>respondeat superior</u>. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976). As explained in <u>Rode</u>:

37

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs. . .
> [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence. Allegations of
> participation or actual knowledge and
> acquiescence, however, must be made with
> appropriate particularity.

Rode, 845 F.2d at 1207.

An application of the above standards to Garcia's complaint clearly shows that he has failed to set forth a cognizable claim against Assistant Warden Meeks. Plaintiff's only allegation is that this defendant failed "to properly supervise his subordinates from taking steps to retaliate [against] plaintiff for exercising his First Amendment right to seek the government for redress of grievances," and "to ensure a proper investigation into plaintiff's administrative complaints..." (Doc. 33, ¶¶ 109, 110). However, such conclusory statements do not show that this defendant knowingly permitted unconstitutional treatment to occur. There is no evidence of record that this defendant was personally involved in any of the alleged incidents. Thus, it is apparent that plaintiff is attempting to impose liability on the basis of respondeat superior. Thus,

38

Assistant Warden Meeks is entitled to judgment as a matter of

law.  An appropriate order will issue.

                                s/Malcolm Muir
                                MUIR
                                United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

PEDRO GARCIA,                     :
                                  :
        Plaintiff                 :   No. 4:CV-06-1533
                                  :
    vs.                           :   (Complaint Filed 8/08/06)
                                  :
                                  :   (Judge Muir)
LT. JACK McARDLE, et al.,         :
                                  :
        Defendants                :

## ORDER

September 25, 2008

For the reasons set forth in the foregoing Memorandum,

**IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc.
   42) is **GRANTED**.  The Clerk of Court is directed
   to enter judgment in favor of defendants and
   against plaintiff on all claims.

2. The Clerk of Court is directed to **CLOSE**
   this case.

3. Any appeal from this Order will be deemed
   frivolous, without probable cause and not
   taken in good faith.

s/Malcolm Muir
MUIR
United States District Judge